**IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| AUTUMN ANTHONY | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | No. 1:20-cv-5487 |
| v. | ) | |
| 1330 S. MICHIGAN, LLC and CLAUDIA SOBIESKI | ) | Amount Demanded: $1,000,000+ |
| | ) | |
| | ) | Jury Trial Demanded |
| | ) | |
| *Defendants*. | ) | |

<u>**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**</u>

Autumn Anthony, ("Plaintiff" or "Ms. Anthony"), by and through her attorneys, Washington Law Offices, P.C., complains of Defendants, 1330 S. Michigan, LLC and Claudia Sobieski ("1330 S. Michigan, LLC" or "Defendants") and states as follows:

<u>**NATURE OF THE CASE**</u>

1. This case arises from Plaintiff's lease agreement with Defendants because of Defendants' breach of contract, racial discrimination, and other misconduct by one or more of Defendants' agents or employees, who were working within the scope of their employment.

<u>**PARTIES**</u>

2. 1330 S. Michigan, LLC owns a residential property located at 1338 S. Michigan Ave, Chicago, Illinois (hereinafter "Property").

3.      Plaintiff is an African-American Illinois citizen who has lived in one of the units managed by Defendants in Chicago, Illinois, from about June 30, 2020, until the present. The Plaintiff was wrongfully evicted from her unit. Plaintiff is female by gender.

4.      Defendants are the property management company and owner of the building.

5.      Defendants are an Illinois corporation. The owner is a citizen of Illinois.

6.      Defendants conduct their Illinois operations in Chicago, Cook County.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this case pursuant to 42U.S.C. § 3612 and 28 U.S.C. § §1331 and 1343. Venue is proper in the Northern District of Illinois and Eastern Division since the Plaintiff resides and the Defendants conduct business within the boundaries thereof.

8.      1330 S. Michigan, LLC conducts business in the Eastern Division.

9.      Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred within the Northern District of Illinois.

## INTRODUCTION

10.     This action is brought pursuant to the Fair Housing Act of 1968, as amended, 42 U.S.C. 3601 *et. seq.* and the Civil Rights Acts of 1866, 42 U.S.C. §§ 1981 and 1982 against the real estate rental agents of a rental apartment community.

11.     Plaintiff alleges that Defendants, 1330 S. Michigan, LLC and its' agents, refused to negotiate for the rental of the subject property based upon the race of the renter and treated Plaintiff differently from other tenants.

12.     Plaintiff further alleges that Defendants illegally and constructively evicted Plaintiff based upon her race and posed different move-in requirements compared to her White-counterpart tenants.

13.     Plaintiff is seeking injunctive relief and punitive damages against Defendants.

## FACTUAL ALLEGATIONS

14.     On or about June 20, 2020, Plaintiff applied for housing with Defendants.

   15. Plaintiff submitted her rental application through a third-party real estate agent, and the real estate agent submitted her application to Defendants.

16.     Neither Defendants nor Plaintiff met each other during the application process.

17.     Shortly after applying, Plaintiff's rental application was accepted.

18.     On or about June 20, 2020, Defendants, (through their agent) extended a written offer of residency, effective June 30, 2020. Under the terms of the Lease Agreement (actual or implied):

      a.     Plaintiff is entitled to possession of the premises without unreasonable interruption;

      b.     Plaintiff is entitled to quiet use and enjoyment of the premises;

      c.     Plaintiff is entitled to be free from unfair treatment based upon her race;

      d.     Plaintiff is entitled to be free from harassment;

      e.     Plaintiff is entitled to live in a discriminatory-free environment;

      f.     Plaintiff is entitled to have guests;

      g.     Plaintiff is entitled to have a key to the premises;

      h.     Plaintiff is entitled to freely access the building and its amenities;

      i.     Plaintiff is entitled to use the garage for parking;

19.     On or about June 20, 2020, Plaintiff accepted Defendants' offer of residency, thereby forming a valid and enforceable agreement.

20.     Plaintiff was informed by 1330 S. Michigan's agents that in order for her to move-in, she would have to tender the first month's rent of $2100, a $2100 security deposit, and last two month's payment of $4200 for a total of $8,400.

21.     Plaintiff felt this was excessive and discriminatory but obliged.

22.     Plaintiff signed a one-year lease agreement ("Agreement").

23.     On or about June 30, 2020, Plaintiff moved into her new residency at 1338 S. Michigan Ave Unit 606 Chicago, IL.

24.     Ms. Anthony did not have the opportunity to meet with the Property Manager until the day before she moved in.

25.     Upon moving in, Ms. Anthony encountered Claudia Sobieski, the Property Manager.

26.     Claudia Sobieski is a Caucasian female.

27.     Plaintiff is an African-American female.

28.     Ms. Anthony is one of the few, African-American tenants. Ms. Anthony believes there are only three tenants that are African-American at 1338 South Michigan Avenue Unit 606 Chicago, IL  60605.

29.     On or about July 22, 2020, Defendants' Property Manager, believed to be Claudia Sobieski, encountered Ms. Anthony in the hallway as she entered her apartment unit.

30.     Defendants' Property Manager set a meeting with Ms. Anthony, prior to the meeting, she told Ms. Anthony to bring her key and transponder. At the meeting, the individual believed to be

Ms. Sobieski asked Ms. Anthony to allow her to check to see if her entrance key to the main door where tenants and guests enter was working. Ms. Anthony believed that this was a strange request but obliged and gave Ms. Sobieski the key and garage transponder. Ms. Sobieski left with Ms. Anthony's key and garage transponder.

31.     Ten minutes later, Ms. Sobieski returned without Ms. Anthony's key. Ms. Anthony requested the key back and asked why she took the key and whether or not she took other tenants' keys.

32.     Ms. Sobieski refused to answer and stated that she would not return Ms. Anthony's key, and Ms. Anthony would have to call management any time she needed to enter the building.

33.     Defendants' Property Manager exchanged the transponder and gave her another one for a different parking space, the Property Manager told Ms. Anthony that they received complaints that her vehicle is too big for the parking space.

34.     Consistently, Ms. Anthony asked the Defendants to return her key to the building's entrance. Defendants continued to ignore her concerns and threatened to remove her personal property and evict her.

35.     Defendants refused to allow Plaintiff to occupy the premises safely and securely.

36.     On numerous occasions, Defendants' agent entered Ms. Anthony's unit without warning, providing prior notice nor notice after the fact.

37.     Defendants' agent entered Plaintiff's unit without providing prior notice.

38.     On or around July 18, 2020, upon unlawful, without notice and made a non-emergency entry into Ms. Anthony's apartment, Defendants' agent encountered Ms. Anthony's cousin (Ms.

Anthony's visiting guest). Ms. Anthony's cousin is an African-American male in his early thirties.

39.     Defendants' agent who entered Ms. Anthony's apartment was a Caucasian female.

40.     Upon the agent's entry, Ms. Anthony's cousin asked the agent, who she was and why she did not announce herself.

41.     The agent informed Ms. Anthony's cousin that he had to leave the apartment and the premises.

42.     Ms. Anthony's cousin was confused and in a state of shock. He contacted Ms. Anthony via telephone and asked her whether she was expecting the Defendants' agent.

43.     Ms. Anthony informed him that she was not expecting anyone, and she called the police.

44.     Defendants' agent was yelling at him and asked him to leave the apartment and she was calling the police. He obliged and left the premises.

45.     The police were called. When they arrived, Anthony's cousin was outside of the building waiting, the police informed Ms. Anthony's cousin that he had a right to be on the premises but recommended that he leave and come back once the agent had calmed down.

46.     Ms. Anthony's cousin left and tried to come back, but the Defendants' agent was waiting by the glass entry door and would not allow him to enter.

47.     On or about July 23, 2020, Defendants shut off Plaintiff's electricity. *Exhibit B*.

48.     Defendants sent an email to Plaintiff and indicated that they interrupted utility service in Plaintiff's apartment which violated RLTO § 5-12-160 and constituted an illegal lockout.

49.     Defendant banned Plaintiffs from having any guests.

50.     Defendants served Plaintiff with several Ten-Day Notices to Terminate her lease. This was excessive since Plaintiff lived there less than a month at the time of the notice was served.

51.     Defendants' agent stated consistently that Ms. Anthony and her apartment smelled like "weed." The agent also stated that Ms. Anthony has "some man" in her apartment and that she has "too many guests."

52.     Without the entrance key, Ms. Anthony could not use or access the building without dialing Defendants' staff on the call box outside. There is no guard at the entrance and Ms. Anthony has to wait until a staff member answers. Ms. Anthony's White counterparts have keys to the entrance and do not have to wait on management staff to buzz them in.

53.     For Ms. Anthony to enter the locked building, she has to call management, wait for someone to answer her call, and then wait until the manager or staff allows her in.

54.     Ms. Anthony's wait time can last anywhere from five to ten minutes. Sometimes management does not answer her call or allow her in.

55.     Ms. Anthony tried to seek the assistance of other tenants by asking them to "buzz" (allow) her in. Once Defendants found out, they notified all tenants that there would be a $500 penalty for "buzzing in" anyone.

56.     On or about July 18, 2020, Plaintiff had a guest over. On July 21, 2020, Defendant emailed Plaintiff no guest policy.

57. As of July 22, 2020, Defendants have not allowed Plaintiff to occupy the premises or have guests.  During her residency with Defendants, Plaintiff was treated differently from her White counterparts.

58.     Defendants' agent consistently harasses Ms. Anthony by following her around the building, watching her on camera, entering her unit when she was and was not home, and threatening to evict Ms. Anthony.

59.     On August 25, 2020, the police were called again by Defendants' agent. Ms. Anthony filed a police report with officers at the time of the incident.

60.     From the beginning of her residency, Plaintiff believed that she was discriminated against by Defendants and their agents based on her race.

61.     Plaintiff's White counterparts are not treated like Ms. Anthony. They were not denied access to the building. Their keys were not revoked, and they were not prevented from having any guests.

62.     During the duration of the Plaintiff's tenancy, Plaintiff's White counterparts were able to use their entry keys. They had access to the garage and allowed to have guests.

## COUNT I:
## VIOLATION OF 42 U.S.C § 3604 AGAINST DEFENDANTS

64. Plaintiff repeats and realleges paragraphs 1-62 as though fully alleged herein.

65. The actions of Defendants, 1330 S. Michigan, LLC, and Claudia Sobieski through their employees and agents, as described above, constitute discrimination on the basis of race in violation of the Fair Housing Act.

**WHEREFORE**, Plaintiff prays this Court to enter judgment on her behalf and against 1330 S. Michigan, LLC and Claudia Sobieski providing:

      a.     That, after jury trial, this Court grants Plaintiff temporary, preliminary, and permanent injunctive relief enjoining Defendants from continuing to discriminate against African-American citizens in violation of the Act.

      b.     That this Court grants Plaintiff remedial relief to remedy the past effects of Defendants' discriminatory practices.

c.      That this Court awards Plaintiff actual damages, costs, and attorneys' fees

as a result of Defendants' conduct.

d.      That this Court awards Plaintiff punitive damages as a result of

Defendants' willful, malicious, and reckless conduct.

e.      That this Court grants such other relief as it deems appropriate.

## COUNT II:
## VIOLATION OF SECTION 804 OF FHA, 42 U.S.C § 3604 AS AMENDED AGAINST DEFENDANTS

66. Plaintiff repeats and realleges paragraphs 64-65 as though fully alleged herein.

67. The actions of Defendants, 1330 S. Michigan, LLC, individually and as agents for

1330 S. Michigan, LLC, constitute discrimination on the basis of race in violation of

Section 804 of the Fair Housing Act, 42 U.S.C. § 3604 as amended.

**WHEREFORE**, Plaintiff prays this Court to enter judgment on her behalf and against

1330 S. Michigan, LLC and Claudia Sobieski providing:

a.      That, after jury trial, this Court grants Plaintiffs temporary, preliminary, and

permanent injunctive relief enjoining Defendants from continuing to discriminate

against African American citizens in violation of the Act.

b.      That this Court grants Plaintiff remedial relief to remedy the past effects

of Defendants' discriminatory practices.

c.      That this Court awards Plaintiff actual damages, costs, and attorneys' fees

as a result of Defendants' conduct.

d.      That this Court awards Plaintiff punitive damages as a result of

Defendants' willful, malicious, and reckless conduct.

e.      That this Court grants such other relief as it deems appropriate.

## COUNT III:
## VIOLATION OF 42U.S.C. § 3605(B)

68. Plaintiff repeats and realleges paragraphs 66-67 as though fully set forth herein.

69. The actions of Defendants constitute discrimination in a residential real estate transaction by an entity whose business includes engaging in such transactions, in violation of 42 U.S.C. § 3605(B).

70. Defendants and one or more of its agents intentionally deprived Plaintiff of the same rights that were enjoyed by White citizens.

71. Other similarly situated residents who were not African American were not subjected to the same disparate treatment.

72. Defendants and one or more of its agents treated other similarly situated Caucasian or non-African American residents more favorably than Plaintiff.

73. Defendants are responsible for the discriminatory conduct of its employees and agents because they were acting within the scope of their employment.

74. The conduct of Defendants and one or more of its agents was pervasive and severe.

75. The conduct of Defendants and one or more of its agents was unwelcome.

76. Defendants, through one or more of its agents, discriminated against Plaintiff with malice and/or reckless indifference to her federally protected rights.

77. Through one or more of their agents, Defendants have discriminated against Plaintiff in violation of 42 U.S.C. § 3605(B).

78. Defendants' actions, through one or more of their agents, in engaging in and permitting race-based discrimination against Plaintiff caused her to suffer severe emotional distress, humiliation, depression, anxiety, pain, and suffering, lost wages and benefits, future

pecuniary losses, inconvenience, loss of enjoyment of life, and other compensatory and consequential damages.

**WHEREFORE**, Plaintiff prays this Court to enter judgment on her behalf and against 1330 S. Michigan, LLC and Claudia Sobieski providing:

a.  That, after jury trial, this Court grants Plaintiff temporary, preliminary, and permanent injunctive relief enjoining Defendants from continuing to discriminate against African American citizens in violation of the Act;

b.  That this Court grants Plaintiff remedial relief to remedy the past effects of Defendants' discriminatory practices.

c.  That this Court awards Plaintiff actual damages, costs, and attorneys' fees as a result of Defendants' conduct;

d.  That this Court awards Plaintiff punitive damages as a result of Defendants' willful, malicious, and reckless conduct;

e.  Compensatory and punitive damages;

f.  Pre-judgment interest;

g.  Post-judgment interest; and

h.  Such other further relief as the Court deems appropriate.


## COUNT IV:
## 42 U.S.C.1981 RETALIATION

79. Plaintiff repeats and realleges paragraphs 68-78 as though fully set forth herein.

80. Defendants are responsible for the conduct of its employees and agents who retaliated against Plaintiff because they were working within the scope of their employment.

81. At relevant times, Defendants, through one or more of its agents, retaliated against Plaintiff, by constructively terminating her tenancy.

82. Plaintiff filed a Housing Discrimination charge with the Cook County Commission on Human Rights and the Cook County Code of Enforcement.

83. Thereafter, Defendants constructively evicted Plaintiff without any lawful basis and before the governmental agencies could internally investigate her allegations concerning discrimination.

84. Defendants, through one or more of its agents, acted with malice or reckless indifference to the federally protected rights of the Plaintiff.

85. As a result of Defendants' retaliation against Plaintiff by one or more of its agents, in violation of 42 U.S.C. 1981, Plaintiff has suffered and continues to suffer severe emotional distress, including but not limited to humiliation, embarrassment, emotional pain, and suffering, for which she is entitled to an award of monetary damages and other relief.

**WHEREFORE**, Plaintiff prays this Court to enter judgment on her behalf and against 1330 S. Michigan, LLC and Claudia Sobieski providing:

a. That, after jury trial, this Court grants Plaintiff temporary, preliminary, and permanent injunctive relief enjoining Defendants from continuing to discriminate against African American citizens in violation of the Act;

b. That this Court grants Plaintiff remedial relief to remedy the past effects of Defendants' discriminatory practices;

c. That this Court awards Plaintiff actual damages, costs, and attorneys' fees as a result of Defendants' conduct;

d.  That this Court awards Plaintiff punitive damages as a result of Defendants' willful, malicious, and reckless conduct;

e.  Compensatory and punitive damages;

f.  Attorneys' fees and costs;

g.  Pre-judgment interest;

h.  Post-judgment interest; and

i.  Such other further relief as the Court deems appropriate.

## COUNT V:
## ILLEGAL LOCKOUT

86. Plaintiff repeats and re-alleges paragraphs 79-85 as if fully set forth herein.

87. Ms. Anthony is the current occupant of 1330 S. Michigan, LLC Chicago, IL.

88. She has resided in the unit since June 30, 2020.

89. Since July 2020, Defendants have illegally locked out Ms. Anthony by refusing to allow her entrance into the apartment building.

90. Without entrance into the apartment building, Ms. Anthony does not have entry into her unit.

91. Ms. Anthony's attorney reached out to Defendants' attorney seeking the return of Plaintiff's key and garage responder to no avail.

92. Defendants' attorney stated that Ms. Anthony does not live there.

93. Ms. Anthony is locked out of her unit from July 22, 2020, to the present.

94. Through one or more of their agents, Defendants have discriminated against Plaintiff in violation of 42 U.S.C.1981;

**WHEREFORE**, Plaintiff prays this Court to enter judgment on her behalf and against 1330 S. Michigan, LLC and Claudia Sobieski providing:

a.     That, after jury trial, this Court grants Plaintiff temporary, preliminary, and permanent injunctive relief enjoining Defendants from continuing to discriminate against African-American citizens in violation of the Act;

b.     That this Court grants Plaintiff remedial relief to remedy the past effects of Defendants' discriminatory practices;

c.     That this Court awards Plaintiff actual damages, costs, and attorneys' fees as a result of Defendants' conduct;

d.     That this Court awards Plaintiff punitive damages as a result of Defendants' willful, malicious, and reckless conduct;

e.     That this Court grants such other relief as it deems appropriate;

     f.     Compensatory and punitive damages;

     g.     Pre-judgment interest;

     h.     Post-judgment interest; and

     i.     Such other further relief as the Court deems appropriate.

## COUNT VI:
## VIOLATION OF CHICAGO RESIDENTIAL LANDLORD TENANT ORDINANCE§ 5-12-160

95. Plaintiff repeats and realleges paragraphs 86-94 as though fully set forth herein.

96. **RLTO § 5-12-160** states the following:

It is unlawful for any landlord or any person acting at his direction knowingly to oust or dispossess or threaten or attempt to oust or dispossess any tenant from a dwelling unit without authority of law, by plugging, changing, adding or removing any lock or latching device; or by blocking any entrance into said unit; or by

removing any door or window from <u>said unit; or by interfering with</u> <u>the services to</u> <u>said unit; including but not limited to electricity,</u> gas, hot or cold water, plumbing, heat or telephone service; or by removing a tenant's personal property from said unit; or by the removal or incapacitating of appliances or fixtures, except for the purpose of making necessary repairs; or by the use or threat of force, violence or injury to a tenant's person or property; or by any act rendering a dwelling unit or any part thereof or any personal property located therein inaccessible or uninhabitable.

97. On July 23, 2020, Defendants' attorney sent an email indicating that the Defendants interrupted utility service in Plaintiff's apartment by shutting of the electricity.

98. Ms. Anthony contacted 1330 S. Michigan, LLC on numerous occasions, but 1330 S. Michigan, LLC did not restore service.

99. This was in direct violation of RLTO § 5-12-160 and constituted an illegal lockout.

**WHEREFORE**, Plaintiff prays this Court to enter judgment on her behalf and against 1330 S. Michigan, LLC and Claudia Sobieski providing:

a. That, after jury trial, this Court grants Plaintiff temporary, preliminary, and permanent injunctive relief enjoining Defendants from continuing to discriminate against African-American citizens in violation of the Act;

b. That this Court grants Plaintiff remedial relief to remedy the past effects of Defendants' discriminatory practices;

c. That this Court awards Plaintiff actual damages, costs, and attorneys' fees as a result of Defendants' conduct;

d. That this Court awards Plaintiff punitive damages as a result of Defendants' willful, malicious, and reckless conduct;

e.  That this Court grants such other relief as it deems appropriate;

f.  That, after jury trial, this Court grants Plaintiff temporary, preliminary, and

permanent injunctive relief enjoining Defendants from continuing to discriminate

against African-American citizens in violation of the Act;

g.  That this Court grants Plaintiff remedial relief to remedy the past effects

of Defendants' discriminatory practices;

h.  That this Court awards Plaintiff punitive damages as a result of

Defendants' willful, malicious, and reckless conduct;

i.  Defendants, through one or more of its agents, have

discriminated against Plaintiff in violation of RLTO § 5-12-160;

j.  Compensatory and punitive damages;

k.  Pre-judgment interest;

l.  Post-judgment interest; and

m.  Such other further relief as the Court deems appropriate.

### COUNT VII:
### VIOLATION OF CHICAGO RESIDENTIAL LANDLORD TENANT ORDINANCE
### § 5-12-050

100.     Plaintiff repeats and realleges Paragraphs 95 - 99 as though fully set forth herein.

101.     **RLTO § 5-12-050** states the following**:**

The landlord shall not abuse the right of access or use it to harass the tenant.
Except in cases where access is authorized by subsection (f) or (h) of this
section, the landlord shall give the tenant notice of the landlord's intent to enter
of no less than two days. Such notice shall be provided directly to each dwelling
unit by mail, telephone, written notice to the dwelling unit, or by other
reasonable means designed in good faith to provide notice to the tenant. If access
is required because of repair work for common facilities or other apartments, a

general notice may be given by the landlord to all potentially affected tenants that entry may be required. In cases where access is authorized by subsection (f) or (h) of this section, the landlord may enter the dwelling unit without notice or consent of the tenant. The landlord shall give the tenant notice of such entry within two days after such entry.

102. According to **RLTO § 5-12-050**, reasonable hours for entry by the Landlord is between the hours of 8:00 a.m. and 8:00 p.m. Defendants' agent entered Plaintiff's apartment unannounced and without notice at 9:30 p.m. July 18, 2020 and further entered Plaintiff's apartment several times thereafter without permission nor notice.

103. Paragraph 28 of the Lease Agreement states the following:

"You will not unreasonably withhold consent for us to enter your apartment at reasonable times for reasonable purposes as provided by statute or ordinance. To the extent required by law, we will give you 48 hours' notice before entering your apartment in the event of a non-emergency."

104. Defendants and their agents entered Plaintiff's premises without notice on numerous occasions which violated RLTO § 5-12-050 and Paragraph 28 of the Lease Agreement.

105. Defendants did not provide any notice prior to entry into the apartment.

106. Defendants did not treat Plaintiff's White counterparts in the same matter.

107. Through one or more of their agents, Defendants discriminated against Plaintiff in violation of RLTO § 5-12-150 and Section 28 of the Lease Agreement.

**WHEREFORE**, Plaintiff prays this Court to enter judgment on her behalf and against 1330 S. Michigan, LLC and Claudia Sobieski providing:

a.      That, after jury trial, this Court grants Plaintiff temporary, preliminary, and permanent injunctive relief enjoining Defendants from continuing to discriminate against African-American citizens in violation of the Act;

b.      That this Court grants Plaintiff remedial relief to remedy the past effects of Defendants' discriminatory practices;

c.      That this Court awards Plaintiff actual damages, costs, and attorneys' fees as a result of Defendants' conduct;

d.      That this Court awards Plaintiff punitive damages as a result of Defendants' willful, malicious, and reckless conduct;

e.      Compensatory and punitive damages;

    f.      Pre-judgment interest;

    g.      Post-judgment interest; and

    h.      Such other further relief as the Court deems appropriate.

**COUNT VIII:**
**BREACH OF CONTRACT AND WRONGFUL ENTRY**

108.      Plaintiff repeats and realleges Paragraphs 100 - 107 as if fully set forth herein.

109.      At relevant times, there existed a valid lease agreement between Plaintiff and Defendants.

110.      Plaintiff performed all her obligations under the contract.

111.      Defendants constantly entered Plaintiff's premises without prior notice or providing notice after entry.

112.    Defendants used their keys to enter the premises on numerous occasions and specifically on July 18, 2020, when Plaintiff's guest was present.

113.    Defendants' agent entered the premises without identifying herself or calling out "management" prior to entry.

114.    On or around July 18, 2020, upon unlawful-nonemergency entry into the premises, Defendants' agent saw Ms. Anthony's guest. Her cousin (the guest) is an African-American male in his early thirties.

115.    Upon entry, Ms. Anthony's cousin asked the female Caucasian agent, who she was and why she did not announce herself.

116.    The female agent informed Ms. Anthony's cousin that he had to leave the premises.

117.    Mr. Anthony's cousin was confused and in a state of shock. He contacted Ms. Anthony via telephone and asked her whether she was expecting the Defendants' agent.

118.    Ms. Anthony informed him that she was not expecting anyone and instructed him to call the police.

119.    He obliged and left the premises because the Defendants' agent told him to leave. She (the agent) was yelling at him and told him that she was calling the police.

120.    The police were called and informed Plaintiff's cousin that he had a right to be at the premises. The police recommended that the Plaintiff's cousin leaves and come back once Defendants' agent had calmed down.

121.    Plaintiff's cousin left and tried to come back, but Defendants' agent waiting by the glass entry door and would not allow him to enter.

122. Defendant's agent blocked entry into the building and denied him access to the apartment.

123. Defendants, through one or more of their agents, wrongfully entered Plaintiff's premises, therefore, breaching their contractual obligations.

124. As a direct or proximate result of Defendants' breach of their contractual obligations to Plaintiff, Plaintiff suffered actual, compensatory, and reasonably foreseeable consequential damages, including lost wages.

**WHEREFORE**, Plaintiff prays this Court to enter judgment on her behalf and against 1330 S. Michigan, LLC providing:

a. That, after jury trial, this Court grants Plaintiff temporary, preliminary, and permanent injunctive relief enjoining Defendants from continuing to discriminate against African-American citizens in violation of the Act;

b. That this Court grants Plaintiff remedial relief to remedy the past effects of Defendants' discriminatory practices;

c. That this Court awards Plaintiff actual damages, costs, and attorneys' fees as a result of Defendants' conduct;

d. That this Court awards Plaintiff punitive damages as a result of Defendants' willful, malicious, and reckless conduct;

e. That this Court grants such other relief as it deems appropriate.

## <u>COUNT IX:</u>

## <u>BREACH OF CONTRACT</u>

125.     Plaintiff repeats and realleges Paragraphs 108 - 124 as if fully set forth herein.

126.     At relevant times, there existed a valid lease agreement between Plaintiff and Defendants.

127.     Plaintiff performed all of her obligations under the contract.

128.     Defendants breached material terms of the contract by:

    a.   Terminating Plaintiff's lease agreement without legal justification or notice;

    b.   Discriminating against Plaintiff based on race;

    c.   Retaliating against Plaintiff for engaging in protected activities;

    d.   Acting in bad faith;

129.     As a direct or proximate result of Defendants' breach of their contractual obligations to Plaintiff, Plaintiff suffered actual, compensatory, and reasonably foreseeable consequential damages, including lost wages.

**WHEREFORE**, Plaintiff prays this Court to enter judgment on her behalf and against 1330 S. Michigan, LLC providing:

    a.   That, after jury trial, this Court grants Plaintiff temporary, preliminary, and permanent injunctive relief enjoining Defendants from continuing to discriminate against African-American citizens in violation of the Act;

    b.   That this Court grants Plaintiff remedial relief to remedy the past effects of Defendants' discriminatory practices;

    c.   That this Court awards Plaintiff actual damages, costs, and attorneys' fees as a result of Defendants' conduct;

d.  That this Court awards Plaintiff punitive damages as a result of
    Defendants' willful, malicious, and reckless conduct;

e.  That this Court grants such other relief as it deems appropriate.

## COUNT X:
## PROMISSORY ESTOPPEL

130.    Plaintiff repeats and realleges Paragraphs 125 through 129 as if fully set forth
herein.

131.    On or about June 22, 2020, Plaintiff accepted a written offer of residency from
Defendants, effective June 30, 2020.

132.    Plaintiff relied upon the promises made by Defendants that she would be able to
live a quiet and peaceful environment free from discrimination.

133.    Reliance on Defendants' promises, Plaintiff, moved into Defendants' premises.

134.    Plaintiff's reliance on Defendants' promises was expected and foreseeable by
Defendants.

135.    Defendants breached material terms of its promises to Plaintiff by failing to
provide discriminatory free housing for Plaintiff.

136.    As a direct or proximate result of Defendants' breach of its promises to Plaintiff,
Plaintiff suffered actual, compensatory, and reasonably foreseeable consequential
damages, including lost wages.

**WHEREFORE**, Plaintiff prays this Court to enter judgment on his behalf and against 1330 S.
Michigan, LLC providing:

a.  That, after jury trial, this Court grants Plaintiff temporary, preliminary, and permanent
    injunctive relief enjoining Defendants from continuing to discriminate against African-
    American citizens;

b.   That this Court grants Plaintiff remedial relief to remedy the past effects of Defendants' discriminatory practices;

c.   That this Court awards Plaintiff actual damages, costs, and attorneys' fees as a result of Defendants' conduct;

d.   That this Court awards Plaintiff punitive damages as a result of Defendants' willful, malicious, and reckless conduct;

e.   That this Court grants such other relief as it deems appropriate;

f.   That this Court grants Plaintiff remedial relief to remedy the past effects of Defendants' discriminatory practices.

## JURY DEMAND

137.     Plaintiff respectfully demands a jury trial on all issues so triable herein pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enters a judgment in her favor and against Defendants after a jury trial for the following:

a.   An amount to be determined by the jury but in excess of $1,000,000.00 for actual, compensatory, and punitive damages;

b.   Compensatory and punitive damages;

c.   Attorneys' fees and costs;

d.   Pre-judgment interest;

e.   Post-judgment interest; and

f.   Awarding such other and further appropriate relief.

Respectfully submitted,

/s/ Maudia Washington

Maudia N. Washington
6319403
Washington Law Offices, P.C. 40
DuPage Court
Suite 106
Elgin, IL 60120
888.586.4441
Attorney for Plaintiff
maudia@ilwashingtonlaw.com